GERMANA PAGÁN, Plaintiff and Appellant, *v.* HEIRS OF JUAN ASENCIO PADILLA, Defendants and Appellees.

No. 5387. Argued June 12, 1931.—Decided December 24, 1931.

*Pascasio Fajardo* for appellant. *Miguel A. García Méndez* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

A compromise, as defined by section 1711 of the Civil Code, "is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted."

Section 1715 provides that—

"No compromise can be made with regard to the civil status of persons . . . ."

A filiation suit may not be made the subject of compromise. *Antongiorgi* v. *Antongiorgi,* 28 P.R.R. 815.

In a filiation suit the attorneys for the respective parties filed a paper entitled "Judicial Authorization for a Compromise," which reads as follows:

"To the Honorable Court:

"Now comes the plaintiff by her guardian *ad litem,* José Pagán, and the latter by his attorneys, Benet & Souffront, and the defendants by their attorneys, Angel A. Vázquez, Nazario & García, and Alemañy & Ramírez, before this Honorable Court and respectfully state and pray:

"I. That plaintiff and defendants have agreed definitely to comprom'se the present suit, on (*previo*) acquiescence by defendants in plaintiff's prayer that she, Germana Pagán, be declared a natural daughter of her predecessor, Juan Asencio Padilla, with the right to use his name and also (*además*) on (*previa*) request that the amended complaint be deemed to have been stricken from the record, in conform'ty with the following clauses:

"A. Defendants consent and plaintiff accepts that, as to her rights and interest in the property constituting the estate left by said predecessor, Juan Asencio Padilla, judgment be rendered for $1,200, to be deposited immediately with the Clerk of this Court, in cash.

"B. In consideration of the receipt of said sum the plaintiff considers that her interest in the property left by said Juan Asencio Padilla has been totally paid.

"II. The plaintiff furthermore alleges that said compromise is useful and convenient for the minor, and absolutely necessary for the following reasons:

"(1) Because in case the complaint herein which is hereby decided in her favor through the acquiescence of the defendants, should not be sustained for any reason, as for example, lack of proof or for some other reason, the plaintiff would not receive a single cent from the estate of her alleged natural father, and moreover because through the present compromise she receives the amount offered to her in a definite and conclusive manner.

"(2) That said comprom'se is furthermore useful, necessary and beneficial to the interest of the plaintiff, because the delay in the prosecution of the present suit, which would be extended by the appeal of the defendants in the hypothetical case that judgment were rendered by this Court sustaining the complaint, and the

subsequent su'ts with regard to a definite appraisal of the estate would cause the plaintiff to receive an amount not much greater than that received by her through the present compromise with such a delay, that her rights would become almost illusory with the sum so received, consider'ng moreover the benefits she would fail to receive by placing the money at interest or investing the money in some other business, compared with the amount now given to her.

"By virtue of the foregoing facts, the parties appearing herein pray this Honorable Court, once the provisions of law have been complied with, to render judgment sustaining the present petition regarding judicial authorization to compromise, granting and approving said judicial authorization to compromise, prayed for by the guardian *ad litem* of the minor, by reason of utility and necessity, approving and affirming in its entirety the stipulations of said compromise, and consequently decreeing the final dismissal of the case at bar, all of this without special pronouncement of costs."

The minutes of the district court contain this entry:

"January 15, 1926.

"The court approves the compromise entered into by the parties, authorizing José Pagán as guardian *ad litem* of the m'nor Germana Pagán, to carry it out as follows: The minor to receive $800 and her attorney $400, the district attorney agreeing to said compromise."

In January 1927, another attorney, acting in behalf of plaintiff and of her guardian *ad litem,* presented a motion wherein it was stated that as a result of the stipulation above mentioned a judgment had been rendered whereby plaintiff was declared to be the recognized natural child of Juan Asencio Padilla and that pursuant to the said stipulation the $1,200 were deposited in court, $800 in cash and $400 in the form of a promissory note (describing it), and that the said judgment had never been entered in the judgment book. This motion was for an order directing the secretary to transcribe the said judgment, *nunc pro tunc,* in the judgment book.

The district judge decreed Germana Pagán to be the recognized natural child of Juan Asencio Padilla with the right to bear his name and directed the secretary to enter a judgment in accordance with the terms of such decree.

Germana Pagán now brings another action and prays for a judgment: That the compromise was null and void; that she is the recognized natural child of Juan Asencio Padilla with the right to bear his name and all other rights incident to that status; that she is entitled to share with the legitimate children of Padilla the property left by him in the proportion of one-half of the share of each of the said children; and that defendants be required to account for the rents, profits, and benefits received from the property from the date of Padilla's death, to deliver her share in the estate and to pay all costs, expenses, disbursements, and attorneys' fees.

The district court rendered judgment for plaintiff upon the second cause of action, that is, to the extent of establishing her status as a recognized natural child. It dismissed the action so far as the first and third counts were concerned, that is, as to the nullity of the previous compromise and as to plaintiff's alleged right to her statutory portion of the property left by Padilla. Plaintiff appeals from these adverse pronouncements.

Appellees rely upon *Ex parte Santiago*, 21 P.R.R. 359 and *Reyes* v. *Cabassa*, 31 P.R.R. 315.

In *Reyes* v. *Cabassa* the interest of plaintiff's attorney (under a contract for a contingent fee) in plaintiff's claim to an inheritance had been included in a compromise of such claim. The district judge on authorizing the compromise had ordered plaintiff to pay to her attorney one-half of the sum to be received by her. The action out of which the claim arose was, as usual, a mixed action of filiation and for recovery of inheritance. The evidence showed that defendant had been relieved by the terms of the compromise from any further pecuniary liability. The doctrine of the case is that in such circumstances an item for attorney's fees included in a memorandum of costs after judgment in the filiation suit should not be allowed. The case is not authority for the proposition that a filiation suit may be compromised and settled by any contract or agreement between the parties.

In the *Santiago* case the agreement of compromise contained the following clause:

"VI. No compromise is proposed in regard to the first cause of action relating to filiation, which is set up in the amended complaint, because this involves the civil status of the plaintiff, the present compromise being confined to the economic consequences which may arise from the filiation claimed, *i.e.*, the second cause relative to the recovery of hereditary property, the first cause of action involving filiation, therefore, being left subject to what the court may decide by the corresponding judgment."

No such clause was embodied in the contract now under consideration. It is based and conditioned upon the withdrawal of defendants' answer and their acquiescence in plaintiff's prayer for a decree establishing her right as a natural child to bear the name, Padilla.

In the *Santiago* case there was no doubt about the intention of the parties to exclude the filiation suit proper from the compromise agreement. There the question was whether or not this could be done, not whether or not it had been done. The gist of the opinion may be found in the following paragraph:

"We agree with the appellant *fiscal* that the two causes of action set up in the said four actions are so intimately connected that it is difficult to separate one from the other. Nevertheless, in view of the attendant circumstances, we are of the opinion that the judgment appealed from should be affirmed."

In the instant case the question is whether or not the parties intended to terminate the filiation suit by compromise, not whether they might have excluded the question of plaintiff's civil status by some other form of agreement. Oscar Souffront, originally one of the attorneys for plaintiff took the stand as a witness for defendants and gave as one of his reasons that he had some doubt as to the final outcome of the filiation suit. The termination of the filiation suit by defendants' acquiescence is set forth as a fact in the statement of reasons why the compromise and settlement should

be deemed useful, convenient and necessary for plaintiff. One of these so-called reasons was that plaintiff would not in any event recover much more than the $1,200 offered in settlement of her claim.

Documentary evidence adduced at the trial tended to show that plaintiff, had she prosecuted her original action to a successful conclusion instead of accepting a compromise, would have received several thousand dollars. The contention of appellant, based upon this evidence, is that she would have received $7,178.61. Defendants, by the payment of $1,200 and by the withdrawal of their answer, avoided the risk of being compelled to pay a much larger amount. The withdrawal of the answer and the acquiescence by defendants in plaintiff's demand for a judgment establishing her status as an acknowledged natural child were as much a part of the consideration for plaintiff's acceptance of the compromise as was the payment of $1,200. In exchange for the $1,200, the withdrawal of the answer and the acquiescence in plaintiff's claim to the status of an acknowledged natural child, plaintiff relinquished her right to all the pecuniary benefits and advantages incident to that status over and above the amount of $1,200. The difference between $1,200 and the actual value of plaintiff's interest in her father's estate was the price that plaintiff paid for the immediate recognition of her right to bear her father's name and the elimination of some delay and perhaps of some risk as to the final outcome of her suit.

The plain purpose of the parties as set forth in the initial statement concerning the agreement was to terminate the suit then pending. It was only because of the prohibition contained in section 1715 that they failed to accomplish that result. As in *Antongiorgi* v. *Antongiorgi et al., supra,* the agreement was an indivisible whole. It was in the teeth of the statutory prohibition and therefore illegal and void.

The district court held that plaintiff, by moving for an order directing the secretary to transcribe the judgment rendered in the original action, had ratified the previous agreement of compromise and that, having thus accepted the benefit of defendants' acquiescence in the complaint filed in such original action, she was estopped to deny the validity of the agreement. This holding comes immediately after the finding that the agreement of compromise related only to the amount which plaintiff was to receive as her share in the property left by Padilla, and that it did not involve her civil status. Neither the opinion of the district judge, nor the brief for appellees explains how plaintiff, by accepting the benefit of defendants' acquiescence in her claim to the status of an acknowledged natural child is estopped to deny the validity of a contract from which the question of such civil status they say had been successfully excluded. The district judge did not hold and appellees do not contend that any question of estoppel can arise from the acceptance of benefits under a contract which is against public policy, and therefore void.

It is familiar law that a person by the acceptance of benefits under a contract may be estopped from questioning the existence, validity, and effect of such contract. A well recognized exception to the rule is that "where the contract is void as against public policy, a person who has accepted a benefit thereunder will not be estopped to defend against the contract when it is sought to be enforced against him." 21 C. J. 1209, section 211. Such a contract can not be made valid by ratification, nor by the doctrine of estoppel. 13 C. J. 506, sections 452 and 453. See also 2 Scaevola 28, 31, 149, and 175.

The judgment of the district court will be reversed, so far as the pronouncements appealed from are concerned, without special pronouncement as to costs, and the case remanded for further proceedings not inconsistent herewith.